## HOCKANUM CO. v. LINCOLN.

*(Common Pleas of New York City and County, General Term.* June 16, 1890.)

FACTORS AND BROKERS—COMMISSIONS.
    Goods were consigned under an agreement that the factor was to receive his commissions on sales within a certain time after receipt of bills for the same. The factor on his part agreed to keep all entries as to such sales in separate books, to collect and remit the accounts upon the respective dates of maturity by check, the remittances to be made daily, if collections reached $1,000, and payments made before maturity to be remitted, less discount, for anticipation of payment. *Held,* that the factor was entitled to commissions only upon the amounts actually remitted.

Case submitted on agreed statement.

Action by the Hockanum Company against Lowell Lincoln, as substituted assignee of John F. Plummer & Co.

Argued before LARREMORE, C. J., and BOOKSTAVER, J.

*Strong & Cadwalader,* for plaintiff. *William B. Hornblower,* for defendant.

BOOKSTAVER, J. The questions presented for determination in this case are the same as were presented in that of the Springville Manufacturing Company against the same defendant, (*ante,* 75,) and argued and submitted at the same time, but differ in this important particular: The Springville Company had only the usual agreement between principal and factor, while the plaintiff, a corporation organized under the laws of the state of Connecticut, had a written agreement with Pomeroy & Plummer, the predecessors of John F. Plummer & Co., entered into on 2d of January, 1884, by which the plaintiff agreed to consign goods for sale to Pomeroy & Plummer, and to pay that firm, as compensation for its services in making such sales, a commission of 6 per cent. upon the amount thereof, after deducting returned goods, and the further sum of 1 per cent. for all other expenses except actual freights, and to make payment of said charges and commissions within six days of receipt of bills for same. Pomeroy & Plummer, among other things, agreed to act as commission merchants for plaintiff, to receive and sell its goods, and guarantied to the plaintiff the prompt payment of the amount of all sales made by them. They also agreed that all sales of plaintiff's goods, and all entries relative to the same, should be kept by them in separate books of account, which books were to be the property of the plaintiffs, and to contain a complete record of all transactions. They further agreed to collect the amount of all accounts sold, and remit the same, upon the respective dates of maturity, by check to the treasurer of the plaintiff; such remittances were to be made daily, unless the amounts received were less than $1,000, in which case the remittance might be delayed until it reached that sum. They also agreed that the guaranty made by them should include and cover the time of payment of all accounts sold on credit, and, if the accounts were not met by the parties to whom sold on their respective dates of maturity, the

firm agreed to pay and remit for the same upon the said dates of maturity or not later than six days thereafter. If Pomeroy & Plummer received payments from parties to whom goods were sold before the date of the maturity of such payments, they were to remit the same promptly when received, deducting therefrom the usual discounts for anticipation of payment only. The agreement contained other provisions about forwarding weekly sketches of sales, monthly payments, trial balances, and so on, which it is not material now to consider. When John F. Plummer & Co. succeeded to Pomeroy & Plummer, on or about the 2d day of January, 1885, this agreement was continued in force in every respect as between the plaintiff and the firm of Plummer & Co. This agreement expressed in terms as strong as the English language is capable of that Plummer & Co. were to remit all the proceeds of sales to the plaintiff with the exception of discounts, and their commissions were not to be deducted by them from the amounts of sales, but were to be remitted to them by the plaintiff within six days after receiving bills therefor. Thus by express agreement no lien could attach to the proceeds of sales, nor was the firm entitled to commissions until such remittances were made. It therefore follows that Plummer & Co. were only entitled to commissions upon such proceeds as were actually remitted to the plaintiff, and were not entitled to any commissions upon the proceeds not remitted. The case does not show whether any of the $18,000 of commissions claimed by the assignee as earned were upon goods, the proceeds of which have been remitted to the plaintiff, and if such be the fact the assignee should be allowed commissions upon such remittances to be offset against the general indebtedness, as pointed out in *Springville Manufacturing Co. Case,* provided Plummer & Co. were not acting in a fiduciary relation to the plaintiff. But, as we have not any *data* from which to determine the amount of such commissions, it follows that all of the questions submitted to the court for decision should be answered in the negative; that is to say, no commissions whatever, as far as appears from the case, are due from the plaintiff, or collectible by the assignee of Plummer & Co., on sales made by defendant's said firm since January 1, 1890, and the assignee is not entitled to the guaranty commissions upon the sales made after January 1, 1890, and there is nothing due the assignee to be set off against the amount due the plaintiff from Plummer & Co. Judgment is ordered accordingly, without costs to either party as against the other, as agreed upon by the parties hereto.